Michael F. Hallabrin, et al. [1] v. Commissioner. Hallabrin v. Commissioner
Docket Nos. 81310-81312, 86759, 86814, 89999, 90204.
United States Tax Court
T.C. Memo 1962-30; 1962 Tax Ct. Memo LEXIS 278; 21 T.C.M. (CCH) 136; T.C.M. (RIA) 62030; February 13, 1962
John Kennedy Lynch, Esq., The East Ohio Bldg., Cleveland, Ohio, for the petitioners. John P. Graham, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The *279 Commissioner determined deficiencies in income tax, and additions to the tax, as follows: Additions to the Tax
* Sec. 293(a)
Sec.
* Sec.
* Sec.
and/or
Year
Deficiency
6654
294(d)(1)(A)
294(d)(2)
Sec. 6653(a)
Sec. 6651(a)
Michael F. Hallabrin: 1953
$ 6,604.00
$595.44
$396.95
$330.20 $
1954
5,791.55
568.36
368.67
289.58
1,447.89
1955
10,987.09
$ 8.37
549.35
1,098.71
1956
7,419.73
364.69
729.37
Michael F. Hallabrin and
Mildred Hallabrin: 1957
6,089.67
20.72
304.48
Clarence I. Steffey and
Marjorie Steffey: 1955
4,517.29
225.86
1956
3,730.31
186.52
1957
3,440.37
172.02
The issues presented are: (1) whether petitioner, Michael F. Hallabrin, understated the receipts from his coin operated machine business for the years 1953 through 1957; (2) whether amounts claimed by petitioner, Michael F. Hallabrin, in 1956 for salaries and utilities incurred in the operation of the coin operated machine business are deductible; (3) whether petitioner, Michael F. Hallabrin, correctly computed depreciation for the *280 coin operated machines for 1957; (4) whether petitioners, Michael F. Hallabrin and Clarence I. Steffey, received any taxable income from the operation of a football pool in 1955, 1956 and 1957; (5) whether petitioner, Michael F. Hallabrin, is liable for additions to the tax under section 293(a), I.R.C. 1939, and section 6653(a), I.R.C. 1954, for the years 1953 through 1957; (6) whether petitioner, Clarence I. Steffey, is liable for additions to the tax under section 6653(a), I.R.C. 1954, for the years 1955, 1956 and 1957; (7) whether petitioner, Michael F. Hallabrin, is liable for additions to the tax under section 294(d)(1)(A), I.R.C. 1939 and section 6654, I.R.C. 1954, for the years 1953, 1954, 1955 and 1957; and (8) whether petitioner, Michael F. Hallabrin, is liable for additions to the tax under section 6651(a), I.R.C. 1954, for the years 1954, 1955 and 1956. Findings of Fact Some of the facts have been stipulated and are incorporated herein by reference. Petitioner, Michael F. Hallabrin, a resident of Mansfield, Ohio, filed individual tax returns for the years 1953 through 1956 *281 with the director of internal revenue at Cleveland, Ohio. In 1957 he filed a joint return with his wife, Mildred Hallabrin. Petitioners, Clarence I. Steffey and Marjorie Steffey, husband and wife, also reside in Mansfield, Ohio, and they filed joint returns for the years 1955 through 1957 with the director of internal revenue at Cleveland. During the years at issue Hallabrin operated a sole proprietorship known as the M. H. Novelty Co. which was engaged in the coin operated machine business. The M. H. Novelty Co. was located at 116 North Main Street, Mansfield, Ohio. Temple Billiards, a poolroom operated by Hallabrin, was also located at 116 North Main Street. In 1955 and 1957 the Main Athletic Club occupied the same location. And in 1956 the Italian American Club was located at 116 North Main Street. Clarence I. Steffey and his wife Marjorie owned all the stock of the Central Ohio Vending Company which was a corporation engaged in the coin operated machine business. Hallabrin and Steffey shared a warehouse behind Temple Billiards for their respective coin operated machine businesses. They also shared the utility costs. Both received their business calls at Temple Billiards.
*282 M. H. Novelty Co. owned 70 machines at 40 locations. The agreement with the location owners was that the proceeds from the machines would be divided with half going to the location owners and the other half to M. H. Novelty Co. Kenneth A. Purkey was employed by Hallabrin during 1953 through 1957 as a service man and collector. Purkey recorded the individual collections on a white slip which was left with the location owner. A yellow carbon slip was retained to be turned over to Hallabrin. Purkey prepared weekly statements for parts of 1953 and 1954 which purportedly contained the weekly collections taken from the yellow carbon slips and the expenses incurred during the week. For the years 1953 through 1957 Hallabrin employed an accountant to make out his income tax returns. A return marked "to be amended" was filed by Hallabrin for 1953 on March 16, 1954. It did not include any receipts or deductions for the M. H. Novelty Co. And the return was never amended. However, from the weekly statements the accountant prepared work papers containing the receipts and expenses for 1953. A similar working paper was prepared in like manner in the course of making out petitioner's return *283 for 1954. A profit and loss statement was also prepared for 1954. However, neither the working papers nor the profit and loss statement was dated and Hallabrin's 1954 tax return was not filed until February 14, 1957. In 1955 the return was made out on the basis of information furnished to the accountant by Hallabrin. It was not filed until after June 15, 1956 although dated April 28, 1956. Again, in 1956, Hallabrin supplied the accountant with unverified gross receipts for M. H. Novelty Co. and a return dated April 15, 1957 was filed on May 20, 1957. The 1957 joint return whish was also prepared by the accountant, included the statement that it was prepared "From information furnished by taxpayer without verification." M. H. Novelty Co. claimed a deduction for wages for 1956 as follows: Charles A. Gantz
$ 625.60
Kenneth A. Purkey
7,676.00
Robert E. Stewart
2,561.00
Howard A. McQuillen
1,000.00
Everett K. Ellison
195.50
$12,058.10
For the years 1954 through 1957 M. H. Novelty Co. claimed utility expenses as follows: 1954
$ 126.21
1955
430.21
1956
1,226.67
1957
203.34
For 1957 Hallabrin voluntarily adopted a three-year write *284 off for the coin operated machines and claimed a depreciation deduction computed as follows: Date
Acquired
Cost
Life
Depreciation
1956
$22,000
3 yr.
$ 7,000
1957
14,000
3 yr.
4,633
$11,633
In 1955, 1956 and 1957 Hallabrin and Steffey conducted a football gambling pool. In each of those years the pool operated nine or ten weeks. The pool cards were obtained through a gambler from a printer in Canton, Ohio, who printed about 5,000 so-called no spot cards a week for Hallabrin. The pool in addition to the no spot cards also sold cards designated as spot cards. They purchased a football handicap service for the operation. And they laid off bets from time to time with the gambler in Canton, Ohio. The cards were sold in Mansfield, Mount Vernon, Manor, Shelby, Ashland and Norwalk, Ohio. The amount bet on the cards varied, with the average bet being approximately one dollar. A commission of 25 percent was paid to those who sold cards. Hallabrin and Steffey split the proceeds after deducting expenses. On June 10, 1960, Hallabrin and Steffey were each convicted in a Federal district court for failure to file wager excise tax returns for the operation *285 of the football pool during September 1955, September 1956 and September 1957 in violation of section 7203, I.R.C. 1954. The Commissioner determined that in 1953 Hallabrin's net profit from M. H. Novelty Co. was $13,166.30 computed on the basis of gross receipts of $36,400 and expenses of $23,233.70. For 1954 the Commissioner determined that the gross receipts of M. H. Novelty Co. were $52,000 and accordingly increased the reported gross receipts of $35,760.50 by $16,239.50. With respect to 1955 the Commissioner determined that the gross receipts of M. H. Novelty Co. were $57,200 and increased the reported gross receipts of $42,200 by $15,000. The Commissioner also determined that in 1955 Hallabrin's share of the football pool operation was $10,450. For 1956 the Commissioner determined that the reported gross receipts for M. H. Novelty Co. of $43,923.70 should be increased by $10,676.30 to $54,600, that wages of $12,058.10 claimed should be reduced to $7,676, and that utilities claimed of $1,226.67 should be reduced to $400. The Commissioner also determined that Hallabrin's share of the football pool operation was $10,975. The Commissioner for 1957 *286 determined that M. H. Novelty Co.'s reported gross receipts of $48,946 should be increased to $54,600, that interest expense of $1,140 should be disallowed, that a loss of business property of $250 should be disallowed and that the depreciation of the coin operated machines of $11,633 should be disallowed to the extent of $2,687.74. Hallabrin's share of the football pool operation for 1957 was determined to be $11,025. The Commissioner determined that Steffey's share of the football pool operation for the years 1955, 1956 and 1957 was $10,450, $10,975 and $11,025, respectively. The Commissioner's determinations were reasonably designed to fairly reflect taxable income in the absence of proper books and records. Opinion In the instant proceedings the Commissioner determined tht Hallabrin understated the gross receipts from his coin operated machine business for the years 1953, 1954, 1955, 1956 and 1957. The Commissioner's determination is presumed correct and the burden is on petitioner to show that the determination was erroneous. Anthony Delsanter, 28 T.C. 845 (1957). Petitioner in support of his contention that the gross income reported was correct introduced *287 summary sheets which were purportedly prepared from the yellow carbon slips described as well as can be done in our findings of fact. None of the yellow slips were put in evidence and Hallabrin testified they were lost. The question of whether such records accurately reflect the gross receipts of M. H. Novelty Co. is one of fact to be decided on the basis of the whole record. Sam Mesi, 25 T.C. 513 (1955). Weekly statements for parts of 1953 and 1954 were introduced. They purportedly contained the total weekly "collections" taken from the yellow carbon slips and the expenses incurred during the week. Purkey, called as a witness for the Commissioner, testified on cross examination that he prepared the statements. The statements for 1953 only covered January, February and March and the weekly "collections" on the statements ranged from $300 to $600. Purkey when questioned on direct examination concerning the amounts collected in 1953 stated: Q. Can you make an estimate of the money that went to M & H Novelty Company for 1953? A. Well, it would be an estimate. I can't say positively. You mean for the full year? Q. For the full year. A. Well, for the full year, *288 let me answer it this way. The reason we have a big business in the coin machine business, 1953 was a very good year. That was Mr. Hallabrin's best year, that I know of. That was his very best year. And we have a big season in that type of business. It usually runs from early fall until early spring. There were months that it may have run around a thousand, but for the full year, I would say thirty-five was high for the full year, full calendar year. For 1954 the statements only included the first six months and Purkey could not remember the average weekly collections for that year. As a result we do not believe that Purkey's testimony that he prepared the statements from the yellow carbon slips is alone sufficient to prove that the amounts recorded as weekly "collections" on such statements are correct. The remaining records constituted columnar listings of weekly collections and expenses for 1956 and 1957 which were purportedly taken from the yellow carbon slips. They were allegedly prepared by Hallabrin and a friend and their credibility rests entirely on the testimony of Hallabrin. We have carefully considered Hallabrin's testimony and based on the whole record we conclude *289 that it is not worthy of belief. The testimony of the accountant who prepared certain work sheets and the returns for the years in question adds little. He had no first hand knowledge of the accuracy of the figures but [worked] from unverified figures supplied by Hallabrin. "In substance, petitioner [has] attempted to hide behind an impenetrable wall and [he tells] us that the Government must accept [the weekly figures] without any opportunity to check [their] accuracy." Anthony Delsanter, supra, page 857. He produced neither the yellow carbon slips nor any other credible evidence to substantiate the records offered. Needless to say, we do not believe that such records are sufficient to overcome the presumption that attaches to the Commissioner's determination. We find nothing arbitrary or excessive in such determination and accordingly hold for the Commissioner on this issue. Cf. Helvering v. Taylor, 293 U.S. 507 (1935). The second issue concerns amounts claimed by Hallabrin in 1956 for wages and utilities in connection with his coin operated machine business. The Commissioner determined that wages claimed of $12,058.10 should be reduced *290 to $7,676 and utilities claimed of $1,226.67 should be reduced to $400. The Commissioner contends that part of the wages was referable not to M. H. Novelty Co. but to another business carried on by Hallabrin, namely, Temple Billiards, which reported no income or deductions for 1956. Hallabrin's own testimony is consistent with the Commissioner's contention as he stated certain persons whose wages were included in the amount deducted by M. H. Novelty Co. were employed by Temple Billiards. Accordingly, we approve the Commissioner's determination. For the years 1954 through 1957 Hallabrin claimed utility expenses for M. H. Novelty Co. as follows: 1954
$ 126.21
1955
430.21
1956
1,226.67
1957
203.34
It is obvious that the amount claimed in 1956 far exceeds any of the claimed utility expenses in other years. Hallabrin offered neither an explanation why the amount claimed in 1956 was out of proportion with the other years nor evidence that such an amount was actually paid. It follows that we sustain the Commissioner's determination that the deductible utility expense for 1956 should be reduced to $400. In 1957 Hallabrin voluntarily adopted a three-year depreciation *291 basis for his coin operated machines. In prior years Hallabrin had deducted the cost of the machines in the year of purchase as cost of goods sold. Such a procedure was employed in 1956. In 1957 when he commenced the three-year write off for the machines, he deducted one-third of the cost of the machines purchased in 1956, even though the entire cost of such machines had been deducted in 1956 as cost of goods sold. Thus the depreciation method utilized in 1957 by Hallabrin gave him a second deduction for the machines purchased in 1956. The Commissioner determined that the depreciation claimed for 1957 should be disallowed to the extent of $2,687.74. We hold that the Commissioner did not err in his determination. The next question involves the Commissioner's determination that Hallabrin and Steffey received taxable income from the operation of a football pool in 1955, 1956 and 1957. Petitioners maintain that the Main Athletic Club or the Italian American Club depending upon the year, actually conducted the football pool and they were merely operatives. We do not agree. We believe that it is apparent from the record that petitioners were conducting the football pool operation. *292 They procured the football pool cards, subscribed to a handicap service, set up the method of distribution, laid off bets and supervised all phases of the operation. In addition both Hallabrin and Steffey were convicted for failure to file wager excise tax returns for the taxable years in connection with the operation of the football pool. As we see it, the aforementioned clubs had no real function in the football pool operation other than as a sort of headquarters from which operations could be conducted. Having found that Hallabrin and Steffey did operate the football pool we are confronted with the question of whether the Commissioner's determination of the amount of income derived from such football pool operation is fair and reasonable. Petitioners claim that the football pool operation resulted in a loss. Hallabrin testified that he had to borrow money to pay the "hits". Similarly, Steffey stated that he lent money to the pool to meet its obligations. There is evidence that Hallabrin did borrow money, but we are unable to find any connection between such borrowings and the football pool operation. Petitioners subscribed to a handicap service from which the football cards *293 were prepared. And even though they were supposedly losing money they continued the operation for three years. Suffice to say, we are not convinced that the football pool was a losing operation. The dearth of findings with respect to the football pool operation emanates from the unsatisfactory testimony relating to the venture and the petitioners' failure to maintain books. In Schira v. Commissioner, 240 F. 2d 672, 673 (C.A. 6, 1957), affirming a Memorandum Opinion of this Court, the court said that: "In the absence of books and records the Commissioner was justified in making assessments based upon other available evidence, provided they were not arbitrary or unreasonable." As shown in our findings, 5,000 "no spot" cards were printed each week plus an undetermined number of "spot" cards. Although the testimony concerning the amount bet varied greatly it would seem that a reasonable average would be one dollar a card. Accordingly, a reasonable gross over a nine or ten-week season would seem to be between $60,000 and $80,000, taking into consideration that all 5,000 no spot tickets might not have been sold but that an undetermined number of spot cards had been sold. *294 The Commissioner's determination that the net after expenses, commissions and "hits" were paid was approximately $20,000 which was then split between petitioners is not, in our opinion, so questionable as to warrant disapproval. Cf. Helvering v. Taylor, supra.The burden was on petitioners to show the error in the Commissioner's determination. If that burden was difficult to meet it was a situation that they themselves created by reason of their failure to keep adequate records. Anthony Delsanter, supra. The Commissioner determined that Hallabrin for the years 1953 through 1957 is liable for additions to tax under section 293(a), I.R.C. 1939, and section 6653(a), I.R.C. 1954, which provides that if "any underpayment * * * is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment". The Commissioner asserts that section 39.54-1, Regs. 118, and section 1.6001-1, Income Tax Regs., require the taxpayer to keep sufficient books and records to reflect his taxable income and contends that Hallabrin did not keep sufficient *295 books and records to reflect his taxable income. The burden rests upon petitioner to prove that the Commissioner erred in his determination. J. T. S. Brown's Son Co., 10 T.C. 840 (1948); Elsie SoRelle, 22 T.C. 459 (1954). In the instant case the books and records of M. H. Novelty Co. were neither complete nor adequate for any of the years in question. And no records whatsoever were maintained with respect to the football pool operation. Accordingly, we sustain the Commissioner's determination. The Commissioner determined that Steffey and his wife who filed a joint return are also liable for additions to tax under section 6653(a), I.R.C. 1954, for the years 1955, 1956 and 1957. Steffey's underpayment arose from the failure to disclose the income derived from the football pool operation. It follows that the additions to tax should be imposed inasmuch as no books or records were maintained with respect to such football pool operation. For the years 1953, 1954 and 1957 the Commissioner determined that Hallabrin is liable for additions to tax under section 294(d)(1)(A), I.R.C. 1939, and section 6654, I.R.C. *296 1954, which relate to the underpayment of estimated tax. In view of the absence of proof by Hallabrin on this issue, we hold for the Commissioner. For the years 1954, 1955 and 1956 Hallabrin filed his returns as follows: Year
Date Due
Date Filed
1954
April 15, 1955
February 14, 1957
1955
April 15, 1956
June 15, 1956
1956
April 15, 1957
May 20, 1957
The Commissioner determined that Hallabrin is liable for additions to tax under section 6651(a) for failure to file tax returns on or before the date prescribed for such filing. There is no showing that the failure to file on the date due was attributable to reasonable cause and not due to wilful neglect. We sustain the Commissioner's additions to tax. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Michael F. Hallabrin and Mildred Hallabrin, Docket No. 90204; Clarence I. Steffey and Mrajorie Steffey, Docket Nos. 81312, 86759, 89999.↩
*. 1939 Code; other sections in 1954 Code.↩